**United States District Court**
For the Northern District of California

1

2

3                                    **Not For Publication**

4

5                            UNITED STATES DISTRICT COURT

6                           NORTHERN DISTRICT OF CALIFORNIA

7                                    EUREKA DIVISION

8

9

10   BARBARA JO MOLLER,                          No. CV 11-4372  NJV

             Plaintiff,                          **ORDER DENYING PLAINTIFF'S**
11                                               **MOTION FOR SUMMARY**
                                                 **JUDGMENT**
12       v.                                      (Doc. No. 14)

13                                               **ORDER GRANTING DEFENDANT'S**
     MICHAEL J. ASTRUE,                          **MOTION FOR SUMMARY**
14   Commissioner of Social Security,            **JUDGMENT**
                                                 (Doc. No. 15)
15           Defendant.

16   _____

17

18                                   **I.  BACKGROUND**

19           Barbara Jo Moller ("Moller" or "Plaintiff") seeks judicial review of an Administrative

20   Law Judge ("ALJ") decision dated July 27, 2010, denying her application for Child's Insurance

21   Benefits.  (Doc. No. 1.)  Pursuant to the Social Security Act (the "Act"), this Court has subject

22   matter jurisdiction over only a final decision by the Commissioner of Social Security.  42

23   U.S.C.A. § 405 (g); *see Bass v. Social Security Admin.*, 872 F.2d 832, 833 (9th Cir. 1989).  The

24   Commissioner of Social Security, Michael J. Astrue ("the Commissioner"), is the Defendant in

25   this action.  The ALJ decision's became the Commissioner's final decision after the Appeals

26   Council denied Moller's request for review on June 23, 2011.  (Administrative Transcript ("Tr.")

27   at 1; Doc. No. 15 at 2.)  This Court's review of the Commissioner's decision is therefore

28   appropriate.

**United States District Court**
For the Northern District of California

1  The parties have consented to proceeding before a magistrate judge.  (Doc. Nos. 5 & 6.)

2  Before the Court are Moller's motion for summary judgment and the Commissioner's cross-

3  motion for summary judgment.  (Doc. Nos. 14 & 15.)  For the reasons discussed herein, the

4  Court denies Moller's motion for summary judgment and grants the Commissioner's cross-

5  motion for summary judgment.

6  ## II.  PROCEDURAL HISTORY

7  On September 10, 2007, at the age of 58, Moller applied for Child's Insurance Benefits

8  on her father's account, alleging that she has been disabled since June 2, 1967 when a train

9  derailed and hit a car in which she was a passenger.  (Doc. No. 14 at 2; Tr. 156.)  The Social

10  Security Administration denied Moller's application initially and on reconsideration.  (Tr. 88-

11  96.)  Subsequently, Moller requested a hearing by an ALJ, which was held on June 15, 2010.

12  (Tr. 26.)  In a July 27, 2010 decision, the ALJ concluded that Moller had not been under a

13  disability within the meaning of the Act prior to June 4, 1971, when Moller became 22 years old.

14  (Tr. 16.)  On June 23, 2011, the Appeals Council denied review of the ALJ's decision, making it

15  the final decision of the Commissioner and subject to judicial review.  (Tr. 1); *see* 42 U.S.C. §

16  405(g).  Moller timely appealed to this Court.

17  On January 25, 2012, Moller moved for summary judgment, arguing that: (1) the ALJ did

18  not consider all the evidence of Moller's inability to function in a competitive work

19  environment, including her work and medical history, (2) the ALJ's holding was contrary to the

20  law because it ignored testimony from the treating physician, Dr. Jitse Johan Couperus, in

21  violation of the Treating Physician Rule, (3) the ALJ unfairly relied on the testimony of

22  Vocational Expert Linda Berkley despite the fact that Moller and Berkley never met before the

23  June 15, 2010 hearing, and (4) the ALJ improperly considered Moller's credibility.  (Doc. No.

24  14.)

25  In his cross-motion for summary judgment, the Commissioner argues that the ALJ

26  properly considered: (1) the evidence of impairment and limitation under the five-step sequential

27  evaluation used for evaluations of disability, (2) the medical opinion evidence, including that of

28  Dr. Couperus, in assessing Moller's Residual Functional Capacity, (3) the credibility of Moller's

2

United States District Court
For the Northern District of California

1   subjective complaints of symptoms, and (4) the vocational expert's testimony and its relevance

2   to Moller's claims.  (Doc. No. 15.)

3   **III.  LEGAL STANDARD**

4   A district court has limited scope of review of an administrative law judge's decision

5   denying Social Security disability benefits and can only set aside a denial of benefits if it is not

6   supported by substantial evidence or if it is based on legal error.  *Flaten v. Sec'y of Health &*

7   *Human Services*, 44 F.3d 1453 (9th Cir. 1995).  The Commissioner's findings "as to any fact, if

8   supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial

9   evidence is "more than a mere scintilla but less than a preponderance; it is such relevant

10   evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v.*

11   *Chater*, 108 F.3d 978, 980 (9th Cir. 1997).  "In determining whether the Commissioner's

12   findings are supported by substantial evidence," a district court must review the administrative

13   record as a whole, considering "both the evidence that supports and the evidence that detracts

14   from the Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

15   The Commissioner's conclusion is upheld where the evidence is susceptible to more than one

16   rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  If the evidence

17   can support either outcome, the Court may not substitute its judgment for that of the ALJ.

18   *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  A decision of the ALJ will not be

19   reversed for errors that are harmless.  *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

20   **IV.  DISCUSSION**

21   Child's Insurance Benefits are available to the children of persons who are deceased or

22   who are drawing Social Security disability or retirement benefits, provided that the child became

23   disabled before age 22.  42 U.S.C.A. § 402(d).

24

25   Disability claims are evaluated according to a five-step process.  In step
    one, the Secretary determines whether a claimant is currently engaged in
    substantial gainful activity.  If so, the claimant is not disabled.  In step two,

26   the Secretary determines whether the claimant has a medically severe
    impairment or combination of impairments.  If the answer is yes, the

27   Secretary determines whether the impairment meets or equals a listed
    impairment that the Secretary has acknowledged to be so severe as to

28   preclude substantial gainful activity.  If this requirement is met, the

3

United States District Court
For the Northern District of California

claimant is conclusively presumed disabled; if not, the Secretary
determines whether the claimant can still perform past relevant work.  If
the claimant can perform such work, she is not disabled.  If the claimant
meets the burden of establishing an inability to perform prior work, the
Secretary must show, at step five, that the claimant can perform other
substantial work that exists in the national economy.

*Reddick*, 157 F.3d at 721.  A claimant bears the burden of proving her disability at steps one

through four, but the burden shifts to the Commissioner at step five to prove that the claimant is

not disabled.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  The

ALJ must consider all evidence in the claimant's case record to determine disability.  *Carpenter*

*v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).  The ALJ has a duty to completely and fairly

develop the record and to assure that the claimant's interests are considered.  *Brown v. Heckler*,

713 F.2d 441, 443 (9th Cir. 1983).  Here, substantial evidence supports the ALJ's finding that

Moller was not disabled under the Act before she became 22 years old.

**A.     The Court's review is limited to the Administrative Record.**

Plaintiff submitted medical records to the ALJ documenting her medical condition(s) in

2006, 2009 and 2010 (Tr. 205-250, 271-275), and observed that her case was hampered because

all her medical records from the period of the 1967 accident were destroyed in the regular course

of business.  In support of her motion for summary judgment, Plaintiff attempted to supplement

the Administrative Record by submitting a letter from a physical therapist to the Court and

additional medical records.  (Doc. No. 14 at 20-24, 29.)  These documents were not before the

ALJ, nor were they presented to the Appeals Council, therefore they are not part of the

Administrative Record.  *See Brewes v. Comm'r of Soc. Sec. Admin.*, No. 11-35216, slip op. at

6851 (9th Cir. June 14, 2012).  The Court cannot consider them as evidence in this case.

In any event, these new records document Plaintiff's condition in 2006-2010, and there is

no evidence in the record that would allow a reasonable fact-finder to deduce based on the new

records that Moller was disabled before she became 22 years old in 1971.

**B.     The ALJ's conclusion that Plaintiff performed Substantially Gainful Activity is
supported by substantial evidence.**

At step one, the claimant bears the burden of showing she is not engaged in Substantially

4

United States District Court

For the Northern District of California

1    Gainful Activity ("SGA").  20 C.F.R. § 404.1520(b).  "Substantial" is defined as "activity that

2    involves doing significant physical or mental activities" and "gainful" is defined as "work that is

3    usually done for pay or profit regardless of profit realization."  20 C.F.R. §§ 404.1572(a),

4    416.972(a); 20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has worked and the work is

5    found to be SGA, the claimant will be found not disabled regardless of the severity of  her

6    physical or mental impairments.  *Id.*

7        The ALJ found that Moller engaged in SGA in the second half of 1970 and all of 1971

8    (before turning 22), when she worked as a licensed vocational nurse.  (Tr. 13.)  This finding is

9    supported by substantial evidence in the record, including Moller's own testimony (Tr. 49-55),

10   and it is not contested by either party.  Despite noting Moller's SGA as a licensed vocational

11   nurse during the period of alleged disability (both before and after turning 22 years old), the ALJ

12   continued with the five-step sequential evaluation process because Plaintiff did not engage in

13   SGA before the second half of 1970.  (Tr. 13.)  Assuming *arguendo* that Moller's short SGA

14   period was not a sufficient basis for the denial of benefits, as the ALJ appears to have done, the

15   Court continues its review of the decision.

16   **C.    The ALJ's conclusion that Plaintiff suffered from a medically severe impairment is
         supported by substantial evidence.**

17       At step two, the claimant must show she has a medically severe impairment or

18   combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A severe impairment is one

19   defined as significantly limiting physical or mental ability to do basic work activity.  *Id.*  The

20   ALJ found Moller had a severe impairment, a left frontal lobe brain injury, prior to attaining the

21   age of 22.  (Tr. 13.)   Again, this finding is supported by substantial evidence in the record (Tr.

22   196-198), and it is not contested by either party.

23   **D.    The ALJ's findings at step three are supported by substantial evidence.**

24       At step three, the ALJ considers whether the claimant has an impairment which (1) meets

25   or equals an impairment listed in Appendix I and (2) meets the 12 month duration requirement.

26   *See* 20 C.F.R. § 404.1520(d).  If the claimant is found to have such an impairment, a disability is

27   presumed and benefits are awarded.  *Id.*  If no such impairment is found, the ALJ must assess the

28

5

United States District Court
For the Northern District of California

1    claimant's residual functional capacity ("RFC") before proceeding to step four. *Id.* An

2    individual's RFC is her ability to do physical and mental work activities on a sustained basis

3    despite limitations from impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). In determining

4    a claimant's RFC, an ALJ must assess all the evidence – including the claimant's and others'

5    descriptions of limitations and medical reports – to determine what capacity the claimant has for

6    work despite his or her impairment. *See id.*

7    Here, the ALJ found that Moller did not have an impairment or combination of

8    impairments that met or medically equaled one of the listed impairments prior to attaining 22

9    years of age. (Tr. 14.) This finding is not contested by either party.

10   Next, the ALJ assessed Moller's RFC and found that prior to attaining age 22, Moller had

11   the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) except that she was able to

12   stand and/or walk for 2 hours in an 8 hour workday; frequently but not constantly use the right

13   dominant upper extremity; no climbing or balancing; should avoid hazards such as unprotected

14   heights and dangerous machinery; occasional interaction with coworkers and the general public;

15   and no close tandem work with coworkers." (Tr. 14.)

16   Plaintiff argues that the ALJ's RFC finding is erroneous because: (1) the ALJ did not

17   consider all the evidence of Moller's inability to function in a competitive work environment,

18   including her work and medical history, (2) the ALJ's holding was contrary to the law because it

19   ignored testimony from the treating physician, Dr. Couperus, (3) the ALJ unfairly relied on the

20   testimony of Vocational Expert Berkley despite the fact that Moller and Berkley never met

21   before the June 15, 2010 hearing, and (4) the ALJ improperly considered Moller's credibility.

22   (Doc. No. 14.) None of these arguments has merit.[1]

23   **1.    The ALJ considered all the evidence in the record.**

24   In making this determination, the ALJ properly considered all the evidence, including

25   Moller's subjective reports of symptoms, testimony from Dr. Couperus and Vocational Expert

26   _____

27   [1] In fact, the evidence in the record, including Plaintiff's own testimony regarding the
     tasks she performed as an LPN before she turned 22 years old, suggests that any error in the
28   ALJ's RFC finding was in Plaintiff's favor.

United States District Court
For the Northern District of California

1    Berkley, and Moller's work and medical history from the relevant time period. (Tr. 14-15.) In

2    her motion for summary judgment, Moller argues that the ALJ erred because he did not consider

3    evidence of her degenerative disc disease. (Doc. No. 14 at 10.) She argues that x-ray and

4    magnetic resonance imaging (MRI) records of her spine from 1991 and 2009 demonstrate that

5    her disease is progressive (Doc. 14 at 3, 10), and she later suggests that the progression started

6    when she injured herself on a trampoline as a child (Doc. No. 14 at 12.) However, there is no

7    evidence that the disc disease was caused by a childhood accident, or more important, that

8    Plaintiff was disabled as a result of disc disease before she turned 22. (*Cf.* Doc. No. 14 at 24.)

9    Absent any evidence in the record establishing such a connection, it was proper for the ALJ to

10   exclude the x-ray and MRI records from the RFC analysis. The ALJ properly based his analysis

11   on evidence in the record pertaining to Moller's condition before she was 22 years old.

12          **2.      The ALJ did not ignore the testimony of Plaintiff's treating physician.**

13          Under the Treating Physician Rule, the Commissioner will generally give greater weight

14   to the opinions of sources of information who have treated the claimant than those who have not.

15   *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). However, if the treating physician

16   gives a qualified medical opinion without supporting medical records, that evidence is less

17   probative. *See, e.g., Halasz v. Apfel*, 2001 WL 253225 (N.D. Cal., Feb. 20, 2001) (denying

18   motions for summary judgment when medical testimony relied on by ALJ was qualified and

19   unsupported by medical records).

20          The ALJ reviewed the prior trial testimony of Dr. Couperus, the physician who treated

21   Moller in 1967 after her accident. (Tr. 195-201.) Dr. Couperus' treatment notes and Plaintiff's

22   medical records pertaining to the 1967 accident are unavailable. (Tr. 15.) The six pages of Dr.

23   Couperus' testimony that Plaintiff submitted to the ALJ constitute the sum total of the medical

24   evidence relating to Plaintiff's condition during the relevant time period. The ALJ addressed Dr.

25   Couperus' testimony throughout the June 15, 2010 hearing and asked Plaintiff questions

26   pertaining to Dr. Couperus' testimony and his treatment of Plaintiff. (Tr. 36-39, 42, 62-64, 71,

27   80.)

28          In his decision, the ALJ noted that Dr. Couperus testified that Moller was in a coma for

two weeks, had residual memory loss, and was distractible, nervous and argumentative after her June 2, 1967 accident.  (Tr. 15.)  He noted that Dr. Couperus testified that Moller's reported anxiety in 1991 "could" be attributed in part to a less than full recovery from the 1967 accident.  (*Id.*)  The ALJ observed that "there are no treating notes to support severe functional limitations during the pre-age 22 period."  (Tr. 15.)  Dr. Couperus did not opine on Moller's disability before she turned 22; nor did Dr. Couperus reach any conclusion as to whether Moller recovered fully after her accident before attaining 22 years of age.[2]  The ALJ thus did consider Dr. Couperus' testimony when assessing Plaintiff's RFC.  Moreover, the RFC determination does not contradict any of Dr. Couperus' testimony.

> **3.    The ALJ properly relied on the testimony of the vocational expert to determine what types of work a claimant with Moller's RFC (as limited) could perform, and the availability of such work.**

Plaintiff incorrectly asserts that Vocational Expert Berkley was required to interview her in person before rendering an opinion about Plaintiff's RFC.  The Vocational Expert did not evaluate Plaintiff's RFC, nor did the ALJ rely on the Vocational Expert to evaluate Plaintiff's RFC.  As explained further below, Vocational Expert Berkley answered hypothetical questions posed to her by the ALJ, and the ALJ used Berkley's answers to evaluate whether Plaintiff could perform past relevant work and whether she could sustain substantial employment.  *See infra*, at 10-11.  There was no error.

> **4.    The ALJ had sufficient evidence to find Moller's subjective reports of symptoms incredible insofar as they contradicted the RFC evidence.**

If a claimant has produced objective evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged, and there is no evidence of malingering, an ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996)).  The ALJ may not reject subjective symptom testimony simply because there is no showing that the

---

[2] Dr. Couperus testified that the symptoms that Moller displayed could "sometimes" be expected to "clear up completely" but might also leave a "residual disability."  (Tr. 199.)

impairment can reasonably produce the degree of symptom alleged. *Smolen*, 80 F.3d at 1282. However, when the ALJ has objective evidence of a claimant performing activities that are inconsistent with the pain or symptoms alleged, the ALJ may find the claimant's testimony incredible. *See id.* at 1281 (claimant's work record and daily activities were relevant to credibility analysis); *see also George v. Astrue*, 301 Fed. Appx. 581 (8th Cir. 2008) (substantial evidence discounted claimant's testimony that her pain and other impairments were disabling, when testimony was inconsistent with claimant's daily activities); *Wendelin v. Astrue*, 366 Fed. Appx. 899 (10th Cir. 2010).

The ALJ found that Moller's "medically determinable impairments could be reasonably expected to cause the alleged symptoms." (Tr. 14.) However, he found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they are inconsistent" with his assessment of Moller's "residual functional capacity" (*Id.*) Moller challenges this finding. (Doc. 14 at 13.)

In finding that Moller's statements of symptoms were incredible insofar as they contradicted the RFC evidence, the ALJ relied on Moller's ability to attend a six-month data entry program with IBM beginning in the fall of 1967, and then to attend five days of classes a week and complete an eighteen-month Licensed Practical Nurse (LPN) training program at City College, thereafter passing a State Board examination and working as an LPN in 1970 and 1971. (Tr. 14, 51.) By basing his judgment on these daily activities, the ALJ proffered specific, clear and convincing reasons for doubting Moller's subjective reports of symptoms insofar as they contradicted the RFC evidence.

Moreover, Moller's testimony, that while working as an LPN during the relevant period she did not have trouble remembering things, was capable of interacting with coworkers and supervisors, and did not receive special accommodations, substantially corroborates the ALJ's findings. (Tr. 48-54.) The ALJ was "persuaded based on her testimony" that Moller could only do light work as described in the RFC, not the medium work she had actually performed as an LPN with little limitation during the relevant period. (Tr. 15.) To a considerable extent, the ALJ in fact relied on Moller's testimony rather than refuted its credibility. However, to the extent

United States District Court
For the Northern District of California

1    that the ALJ's RFC determination contradicts Moller's testimony, it is supported by specific,

2    clear and convincing reasons.

3    **E.    The ALJ's finding that someone with Plaintiff's RFC could not perform Plaintiff's past relevant work is supported by substantial evidence.**

4         At step four, the ALJ determines whether a claimant can perform his or her past relevant

5    work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).  Often this inquiry is limited to the last 15

6    years, as recommended by the SSA guidelines, but that limited scope is not mandatory.  *See*

7    *Smith v. Sec'y of Health & Human Services*, 893 F.2d 106, 109 (6th Cir. 1989).  The ALJ

8    reviews a claimant's RFC and the physical and mental demands of the work he or she has

9    previously performed.  *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  If

10   the ALJ determines the claimant has the RFC required to perform this past work, the claimant is

11   found not disabled.  If the claimant cannot perform this past work, the ALJ then proceeds to step

12   five.  Here, the ALJ relied principally on the Vocational Expert's testimony to find that someone

13   with the RFC that the ALJ had determined for Moller could not perform Moller's past relevant

14   work as an LPN.  (Tr. 15.)

15   **F.    The ALJ's finding that Plaintiff could engage in gainful activity that exists in significant numbers in the national economy is supported by substantial evidence.**

16

17        At step five, the Social Security Administration must demonstrate that the claimant is not

18   disabled and that, based on the RFC from the pre-22 years old period, she can engage in some

19   type of substantial gainful activity that currently exists in "significant numbers" in the national

20   economy.  *Smolen*, 80 F.3d at 1291; *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068,

21   1071 (9th Cir. 2010) (where claimant establishes that she suffers from a severe impairment that

22   prevents her from doing past work, burden shifts to the Commissioner to show that she can

23   perform some other work).  Courts have found work is available in "significant numbers" when

24   there are tens of thousands of jobs nationally that the claimant can perform.  *See, e.g., Lewis v.*

25   *Astrue*, 2012 WL 1067397 (N.D. Cal., Mar. 28, 2012) (16,000 and 90,000 jobs nationally, for two

26   respective occupations, satisfied the significant numbers requirement).

27        If the claimant's limitations are only exertional, the ALJ must apply the Medical

28

10

United States District Court
For the Northern District of California

1  Vocational Guidelines ("the grids").[3]  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir.

2  2006).  If the claimant's limitations are only non-exertional, "the grids are inappropriate, and the

3  ALJ must rely on other evidence." *Id.*; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(e).

4  If claimant's limitations are both exertional and non-exertional, the "ALJ must consult the grids

5  first." *See Lounsbury*, 468 F.3d at 1115.  In cases where the grids are "not fully applicable," the

6  ALJ may meet the step five burden by propounding to a vocational expert a hypothetical that is

7  based on medical assumptions supported by substantial evidence in the record and that reflects all

8  the claimant's limitations.  *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

9       The ALJ first found that Moller would not be considered disabled, based on applying her

10  facts to the grids, pursuant to Medical-Vocational Rule 202.21.  (Tr. 16.)  However, noting that

11  Moller had additional limitations that were not fully taken into account when using the grids, the

12  ALJ relied on Vocational Expert Berkley to determine if Moller, based on her RFC from the

13  relevant period, could attain substantial gainful employment that exists in significant numbers

14  today.  (*Id.*)  He propounded several hypotheticals to Berkley based on different medical

15  assumptions.  Berkley's testimony did not refute anything from Dr. Couperus' testimony.  The

16  content of Berkley's testimony did not require her to meet with Moller before the hearing.

17       Berkley testified that someone with the RFC that the ALJ eventually found for Moller is

18  able to perform such occupations as "telephone quotation clerk (financial)" and "order clerk, food

19  and beverage (hotel and restaurant)."  (*Id.*)  Further, Berkley testified that both jobs are

20  categorized as "sedentary and unskilled," the former with jobs numbering 57,000 in the nation

21  and 100 in the San Francisco Bay Area and the latter with jobs numbering 155,000 in the nation

22  and 2,000 in the San Francisco Bay Area.  (*Id.*)  Therefore, the ALJ's finding that someone with

23  Moller's RFC could find work that exists in significant numbers in the national economy is

24  supported by substantial evidence.

25                              **V. CONCLUSION**

26       Each of the arguments presented in Moller's motion for summary judgment fails to

27

28       [3]  The Medical-Vocational Guidelines are a matrix system for handling claims that
involve substantially uniform levels of impairment.  *See* 20 C.F.R. Part 404, Subpt. P, App.2.

11

demonstrate that the ALJ's findings were based on legal error or were unsupported by substantial evidence.  First, the ALJ properly considered all the evidence of Moller's inability to function in a competitive work environment, including her work and medical history.  Second, the ALJ's findings were wholly consistent with and did not ignore testimony from Moller's treating physician.  Third, the ALJ properly relied on the testimony of the Vocational Expert.  Lastly, the ALJ's determination that Moller's testimony was incredible to the extent that it contradicted her RFC was supported by substantial evidence, including evidence of Moller's daily activities during the relevant period.

Accordingly, **IT IS HEREBY ORDERED** that:

(1)     Plaintiff's motion for summary judgment is **DENIED**;

(2)     Defendant's cross-motion for summary judgment is **GRANTED;**

(3)     The Clerk of the Court is directed to close this case.

DATED:  June 26, 2012                                        _____

NANDOR J. VADAS
United States Magistrate Judge

United States District Court

For the Northern District of California